COPY

1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
2    Including Professional Corporation
    SHANNON Z. PETERSEN, Cal. Bar. No. 211426
3      spetersen@sheppardmullin.com
    501 West Broadway, 19th Floor
4    San Diego, CA 92101-3598
5    Telephone:   619-338-6500
    Facsimile:    619-234-6500
6      spetersen@sheppardmullin.com

7  BURKE, WARREN, MACKAY & SERRITELLA, P.C.
    LEANN PEDERSEN POPE, *pro hac vice* application to be filed
8      lpope@burkelaw.com
    VICTORIA R. COLLADO, *pro hac vice* application to be filed
9      vcollado@burkelaw.com
    SHANA A. SHIFRIN, *pro hac vice* application to be filed
10     sshifrin@burkelaw.com
    330 North Wabash Avenue, 22nd Floor
11   Chicago, Illinois 60611
    Telephone:   312-840-7000
12   Facsimile:    312-840-7900

13  Attorneys for Defendant
    CHASE HOME FINANCE LLC
14

15                  CV10  5838-RSWL
                               (CWx)

16              UNITED STATES DISTRICT COURT
              CENTRAL DISTRICT OF CALIFORNIA

17  CATALINA ANDAY, individually and on         Case No.
    behalf of the general public, others Similarly
18  Situated, and on Behalf Plaintiffs,         CLASS ACTION
    of the general Public
                                vs.              CHASE   HOME   FINANCE   LLC'S
19                                               NOTICE OF REMOVAL UNDER 28 USC
    CHASE HOME FINANCE, LLC, Quality             § 1441(b)
20  Loan Services Corp. and DOES 1 through 100,
    inclusive,
21
                                                 Complaint Filed: June 21, 2010
22              Defendants.

23

24  TO THE CLERK OF THE ABOVE-ENTITLED COURT:

25       PLEASE TAKE NOTICE THAT defendant Chase Home Finance LLC ("Chase"), by its

26  attorneys, respectfully files this Notice of Removal, pursuant to 28 U.S.C. Sections 1441 *et seq.*

27  and the Class Action Fairness Act of 2005, Pub. L. No. 109-2, codified in relevant part at 28

28

                                          CHASE HOME FINANCE LLC'S
                                             NOTICE OF REMOVAL
725440v4

U.S.C. Section 1332(d)(2), to remove the above captioned matter from the Superior Court of the State of California for the County of Los Angeles – North Central District, in which the case is now pending, to the United States District Court for the Central District of California. In support thereof, Chase states as follows:

1.      On June 21, 2010, Plaintiff Catalina Anday ("Plaintiff") filed a complaint in the Superior Court of the State of California for the County of Los Angeles – North Central District, Case Number EC 0535135.

2.      On July 6, 2010, Chase was served with the summons and complaint through CT Corporation, Chase's registered agent. This Notice of Removal is timely pursuant to 28 U.S.C. Section 1446 because it is filed within thirty days after receipt of the summons and complaint. A copy of the summons and complaint is attached hereto as Exhibit A, as required by 28 U.S.C. Section 1446(a). Chase has not received any other process, pleadings or orders.

3.      Venue is proper in this District pursuant to 28 U.S.C. Section 1441(a) because the action was originally filed in the Superior Court of the State of California for the County of Los Angeles – North Central District, which is within this District, Plaintiff alleges to reside in this District, and the property at issue in this matter is located in this District.

4.      Chase will give written notice of the filing of this Petition for Removal to all parties, and will file a copy of this Petition for Removal with the Superior Court of the State of California for the County of Los Angeles – North Central District.

5.      Consent of Defendant Quality Loan Services Corp. to removal is not required. *United Steel, Paper & Forestry, Rubber Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union v. Shell Oil Co.*, 549 F.3d 1204, 1209 (9th Cir. 2008) (holding that CAFA does not require consent of all defendants and that timely removal petition of one defendant is sufficient to remove entire case).

-2-

6.      As explained below, this Court has subject matter jurisdiction over this case under the Class Action Fairness Act.

**Plaintiff's Allegations and Alleged Damages**

7.      Plaintiff is a resident of Glendale, California.  (Compl. ¶ 29.)

8.      Plaintiff alleges that this action is brought on behalf of homeowners who have received notices of default and "have been subjected to fraud, deception, and unfair dealings by lenders, mortgage brokers, lender representatives and others working in concert with lenders." (*Id.* ¶ 1.)

9.      Plaintiff brings this action against Chase and Washington Mutual ("WaMu") and alleges "Chase Home Finance, LLC and Washington Mutual are one and the same entity since Chase's recent procurement of Washington Mutual." (*Id.* ¶ 35.)[1]

10.      Plaintiff has also sued Defendant Quality Loan Services Corp. as "the purported Trustee for the beneficiary of the Investment Banker, and Servicer of the loan that provides for non-judicial foreclosure services within California." (*Id.* ¶ 37.)

11.      Plaintiff purports to bring eight cause of action in her complaint:  (1) Fraud and Intentional Misrepresentation (*id.* ¶¶ 102-114); (2) Deceit pursuant to Cal. Civ. Code §1710-11 (*id.* ¶¶ 115-126); (3) General Negligence in Not Avoiding Foreclosure or Modifying Loan Terms (*id.* ¶¶ 127-137); (4) Negotiation in Bad Faith, and Violation of C.C.P. § 1161 *et seq.*, and Relief From Foreclosure. C.C.P. § 1179 (*id.* ¶¶ 138-176); (5) Concealment (*id.* ¶¶ 177-188); (6) Strict Products Liability:  Manufacturing or Design Defect (*id.* ¶¶ 189-212); (7) Strict Product Liability: Failure to Adequately Warn (*id.* ¶¶ 213-228); and (8) Unlawful Business Practices in Violation of California Business & Professions Code § 17200, *et seq.* ("UCL") (*id.* ¶¶ 229-240).

12.      Plaintiff seeks the following relief:

---

[1]  Chase disputes this allegation and will address it at the appropriate time.

-3-

725440v4

a. Reinstatement of title to real property if defendants obtained title through foreclosure. (*Id.* Prayer for Relief ¶ 1.)

b. A restraining order preventing defendants from obtaining an automatic stay, evicting plaintiff from her real property or offering or advertising her real property for sale. (*Id.* Prayer for Relief ¶ 2.)

c. A stay action until judicial matters herein are resolved. (*Id.* Prayer for Relief ¶ 3.)

d. Quash of any unlawful detainers obtained against the plaintiff and a denial of defendants' request for a writ of possession, and an order compelling defendants to effectuate a "good faith modification of the Note." (*Id.* Prayer for Relief ¶ 4.)

e. Costs of suit herein. (*Id.* Prayer for Relief ¶ 5.)

f. Compensatory damages according to proof at time of trial. (*Id.* Prayer for Relief ¶ 6.)

g. Special Damages according to proof at time of trial. (*Id.* Prayer for Relief ¶ 7.)

h. Exemplary and punitive damages subject to proof at trial. (*Id.* Prayer for Relief ¶ 8.)

i. Interest in an amount according to proof at trial. (*Id.* Prayer for Relief ¶ 9.)

j. Attorneys' fees and costs. (*Id.* Prayer for Relief ¶ 10.)

k. An order effecting rescission of loan and security interest. (*Id.* Prayer for Relief ¶ 11.)

l. Declaratory relief on the monthly tender amount to affect rescission. (*Id.* Prayer for Relief ¶ 12.)

m. Such other and further relief as the court may deem just and proper. (*Id.* Prayer for Relief ¶ 13.)

725440v4

**THIS COURT HAS JURISDICTION OVER PLAINTIFF'S CASE UNDER THE CLASS ACTION FAIRNESS ACT.**

13.   This Court has jurisdiction over Plaintiff's case under the Class Action Fairness Act, 28 U.S.C. Section 1332(d)(2) ("CAFA").

14.   Plaintiff filed her complaint as a purported class action.[2]  Under CAFA, the District Courts have original jurisdiction over any civil action in which:  (a) any member of the class of plaintiffs is a citizen of a State different from any defendant, and (b) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.  28 U.S.C. § 1332(d)(2). CAFA applies to any civil action commenced on or after February 18, 2005.   Each of the requirements for jurisdiction under CAFA is met in this case.

15.   First, this case is a purported class action for purposes of CAFA.  Plaintiff purports to bring the complaint on behalf of a putative class.  (Compl. ¶¶ 28, 33, 40.)

16.   Second, the putative class consists of over 100 members as required under 28 U.S.C. Section 1332(d)(5)(B).  Plaintiff's putative class is "the general public" who has been "misled and deceived by the acts and practices of defendants" (*id.* ¶ 33), and includes borrowers who received WaMu originated negative amortization loans originated in California after January 4, 2006 (*see id.* ¶¶ 45, 50, 95).   Chase has identified over 100 negative amortization loans originated by WaMu in California after January 4, 2006.  (*See* Robinson Decl., Ex. B, ¶ 4.)

17.   Third, there is minimal diversity of citizenship between the parties.  Plaintiff is a resident of California (Compl. ¶ 29), and Chase is a Delaware limited liability company with a principal place of business in New Jersey, who sole member is Chase Home Finance, Inc., a

_____

[2]  Chase denies that this case is appropriate for class treatment.  Chase further denies that it is subject to any liability and denies that Plaintiffs and/or the purported class will ultimately be entitled to recovery in any amount.  Chase does not admit that, if liability is found, it will exceed $5,000,000.  Instead, the figures set forth herein are solely for purposes of establishing that the CAFA amount in controversy requirement is satisfied, when taking the facts alleged in the Complaint as true solely for purposes of this Notice.

1   Delaware corporation with a principal place of business in New Jersey.  Chase is a citizen of

2   Delaware and Jersey, and no other state.

3        18.    Fourth, Plaintiff alleges more than $5,000,000 in relief, exclusive of interest and

4   costs on behalf of herself and the putative class because:

5            a.    Plaintiff alleges that her damages exceed $50,000 (Compl. ¶ 75).  Plaintiff

6   purports to bring this action on behalf of other borrowers in California who received

7   negative amortization loans originated by WaMu after January 4, 2006. (Compl. ¶¶ 17-18,

8   105.)  WaMu originated more than 100 negative amortization loans in California after

9   January 4, 2006. (*See* Robinson Decl., Ex. B, ¶ 4.)  Therefore, given that Plaintiff's claim

10  for more than $50,000 in damages is based on a negative amortization loan originated by

11  WaMu in California, and WaMu originated well over 100 other negative amortization

12  loans in California after January 4, 2006, the purported class damages would far exceed

13  $5,000,000.

14           b.    Additionally, Plaintiff brings UCL claims on behalf of a purported class of

15  borrowers who made loan payments on negative amortization loans originated by WaMu

16  after January 4, 2006." (*See, e.g.*, Compl. ¶¶ 33, 231).  Plaintiff requests the Court to

17  "order defendants to restore any person in interest any money" acquired through purported

18  unfair competition.  (*Id.* ¶ 238.)  Loan payments on all negative amortization loans

19  originated by WaMu in California after January 4, 2006 greatly exceed $5,000,000. (*See*

20  Robinson Decl., Ex. B, ¶ 5.)  Thus, any award of damages based on payments made by the

21  putative class involves an amount in controversy that would far exceed $5,000,000.

22           c.    Plaintiff also asks the Court declare her loan and mortgage invalid, and

23  rescind her loan and security interest. (*See, e.g.*, Compl. ¶ 4 and Prayer for Relief ¶ 11.)

24  The total outstanding principal balances on negative amortization loans originated by

-6-

725440v4

WaMu in California after January 4, 2006 far exceeds $5,000,000. (*See* Robinson Decl., Ex. B, ¶ 6.)  Thus, declaring Plaintiff's and putative class members' loans invalid and/or rescinding these loans would also result in putative damages that exceed $5,000,000.

Under any of the above calculations of Plaintiff's damage theories, the putative damages exceed $5,000,000 as required under 28 U.S.C. Section 1332(d)(2).

19.  Therefore, the Court has jurisdiction over this case under CAFA.

20.  Payment of the appropriate fees and costs for removal and docketing of this matter in federal court, if any, are tendered with this Notice.

**WHEREFORE,** Defendant Chase Home Finance LLC respectfully requests that this action proceed in this Court as an action properly removed hereto.

Dated:  August 5, 2010

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____
SHANNON Z. PETERSEN

Attorneys for Defendant
CHASE HOME FINANCE
Email: spetersen@sheppardmullin.com

-7-

Exhibit A

 CT Corporation

**Service of Process Transmittal**
07/06/2010
CT Log Number 516895869

**TO:** Carl Del Vecchio
JPMorgan Chase Bank, N.A.
1 Chase Manhattan Plaza - 20th Floor, Legal Department
New York, NY 10081-

**RE:** **Process Served in California**

**FOR:** Chase Home Finance LLC (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Catalina Anday, individually and All Others Similarly Situated, and on Behalf of the General Public, Pltfs. vs. Chase Home Finance, LLC, et al., Dfts. *Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Summons, Cover Sheet, Cover Sheet Addendum, Notice of Order to Show Cause, Notice of Case Management Conference, Attachment(s), Complaint, Exhibit(s) |
| **COURT/AGENCY:** | Los Angeles County, Superior Court, Glendale, CA Case # EC053135 |
| **NATURE OF ACTION:** | Foreclosure Litigation - Unlawful Business Practices - Failure to fully disclose loan modification payment options to avoid foreclosure sale of the real property located at 408 S. Chevy Chase Drive, Glendale, CA 91205 |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 07/06/2010 at 12:05 |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service - file written response // September 16, 2010 at 8:30 a.m. - Order to Show Cause // November 4, 2010 at 8:30 a.m. - Case Management Conference |
| **ATTORNEY(S) / SENDER(S):** | Victor Hobbs The Law Offices of Victor E. Hobbs 17981 Sky Park Circle Suite C Irvine, CA 92614 949-221-9700 |
| **REMARKS:** | Documents were altered by process server at time of service. Please Note: Page 2 of 2 of the Civil Case Cover Sheet not received with process at time of service. |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 07/06/2010, Expected Purge Date: 08/05/2010 Image SOP |
| **SIGNED:** | C T Corporation System |
| **PER:** | Nancy Flores |
| **ADDRESS:** | 818 West Seventh Street Los Angeles, CA 90017 |
| **TELEPHONE:** | 213-337-4615 |

Page 1 of 1 / DH

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

 

JUL  6 2010, @ 12'D S

## SUMMONS
### (CITACION JUDICIAL)

SUM-100

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Chase Home Finance, LLC, Quality Loan Services Corp., and Does
1-100, Inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Catalina Anday , individually and All Others Similarly Situated, and on
behalf of the General Public,

```
FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

ORIGINAL FILED

JUN 2 1 2010

LOS ANGELES
SUPERIOR COURT
```

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is: | CASE NUMBER: |
|---|---|
| (El nombre y dirección de la corte es:)  Superior Court of California | (Número del Caso): **BC 0 5 3 1 3 5** |

Los Angeles County - North Central District
600 East Broadway, Glendale, CA 91206

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
L/O of Victor Hobbs, 17981 Sky Park Circle, Suite C, Irvine, California 92614 (949) 221-9700

| DATE:  **JUN 2 1 2010** | JOHN A. CLARKE | Clerk, by | **C. LUNA** | , Deputy |
|---|---|---|---|---|
| (Fecha) | | (Secretario) | | (Adjunto) |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* CHASE Home Finance LLC

under: ☐ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)       ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)       ☐ CCP 416.90 (authorized person)

☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

## SUMMONS

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

CM-010

**ORIGINAL FILED**

JUN 2 1 2010

**LOS ANGELES SUPERIOR COURT**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

Victor E. Hobbs, Esq. (SBN 80191)
LAW OFFICES OF VICTOR HOBBS
17981 Sky park Circle, Suite C
Irvine, California 92614

TELEPHONE NO.: (949) 221-9700   FAX NO.: (949) 221-1707
ATTORNEY FOR (Name): Plaintiff, Catalina Anday

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 600 East Broadway
MAILING ADDRESS: 600 East Broadway
CITY AND ZIP CODE: Glendale CA 91206
BRANCH NAME: North Central District

CASE NAME:
ANDAY v. CHASE HOME FINANCE, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | BC 053135  JUDGE:  DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[✓] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a.[✓] monetary   b.[✓] nonmonetary; declaratory or injunctive relief   c.[✓] punitive
4. Number of causes of action (specify):
5. This case [ ] is [✓] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: May 10, 2010

Victor E. Hobbs, Esq.
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]
**CIVIL CASE COVER SHEET**
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403
Cal. Standards ...

| SHORT TITLE: ANDAY v. CHASE HOME FINANCE, et al. | CASE NUMBER BC 053135 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to LASC Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

Item I.  Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES    CLASS ACTION? ☐ YES    LIMITED CASE? ☐ YES    TIME ESTIMATED FOR TRIAL 4-7    ☐ HOURS/ ☑ DAYS

Item II. Select the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Los Angeles Superior Court Local Rule 2.0.

| Applicable Reasons for Choosing Courthouse Location (see Column C below) |
|---|

1. Class Actions must be filed in the County Courthouse, Central District.
2. May be filed in Central (Other county, or no Bodily Injury/Property Damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos  (04) | ☐ A6070  Asbestos Property Damage | 2. |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1., 2., 4. |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1., 2., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1., 2., 4. |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 2., 4. |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1., 2., 3. |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 2., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |

| SHORT TITLE: | CASE NUMBER |
|---|---|
| ANDAY v. CHASE HOME FINANCE, et al. | |

| A<br>Civil Case Cover<br>Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>-See Step 3 Above |
|---|---|---|
| Professional<br>Negligence<br>(25) | ☐ A6017   Legal Malpractice | 1., 2., 3. |
| | ☐ A6050   Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| Other (35) | ☐ A6025   Other Non-Personal Injury/Property Damage tort | 2., 3. |
| Wrongful Termination<br>(36) | ☐ A6037   Wrongful Termination | 1., 2., 3. |
| Other Employment<br>(15) | ☐ A6024   Other Employment Complaint Case | 1., 2., 3. |
| | ☐ A6109   Labor Commissioner Appeals | 10. |
| Breach of Contract/<br>Warranty<br>(06)<br>(not insurance) | ☐ A6004   Breach of Rental/Lease Contract (not Unlawful Detainer or wrongful eviction) | 2., 5. |
| | ☐ A6008   Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | ☐ A6019   Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | ☐ A6028   Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| Collections<br>(09) | ☐ A6002   Collections Case-Seller Plaintiff | 2., 5., 6. |
| | ☐ A6012   Other Promissory Note/Collections Case | 2., 5. |
| Insurance Coverage<br>(18) | ☐ A6015   Insurance Coverage (not complex) | 1., 2., 5., 8. |
| Other Contract<br>(37) | ☐ A6009   Contractual Fraud | 1., 2., 3., 5. |
| | ☐ A6031   Tortious Interference | 1., 2., 3., 5. |
| | ☐ A6027   Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| Eminent<br>Domain/Inverse<br>Condemnation (14) | ☐ A7300   Eminent Domain/Condemnation        Number of parcels_____ | 2. |
| Wrongful Eviction<br>(33) | ☐ A6023   Wrongful Eviction Case | 2., 6. |
| Other Real Property<br>(26) | ☑ A6018   Mortgage Foreclosure | 2., 6. |
| | ☐ A6032   Quiet Title | 2., 6. |
| | ☐ A6060   Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| Unlawful Detainer-<br>Commercial (31) | ☐ A6021   Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer-<br>Residential (32) | ☐ A6020   Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer-<br>Drugs (38) | ☐ A6022   Unlawful Detainer-Drugs | 2., 6. |
| Asset Forfeiture (05) | ☐ A6108   Asset Forfeiture Case | 2., 6. |
| Petition re Arbitration<br>(11) | ☐ A6115   Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |

*Side labels (left margin, top to bottom):* Non-Personal Injury/Property Damage/ Wrongful Death Tort (Cont'd.) · Employment · Contract · Real Property · Unlawful Detainer · Judicial Review

LACIV 109 (Rev. 01/07)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 2 of 4

| SHORT TITLE:<br>ANDAY v. CHASE HOME FINANCE, et al. | CASE NUMBER |
|---|---|

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER COLUMN C<br>WHICH APPLIES IN THIS CASE<br><br>☐1. ☑2. ☐3. ☐4. ☐5. ☑6. ☐7. ☐8. ☐9. ☐10. | ADDRESS:<br>408 S Chevy Chase Drive |
|---|---|
| CITY:<br>Glendale | STATE:<br>CA | ZIP CODE:<br>91205 | |

Item IV. *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the __Glendale__ courthouse in the __North Central__ District of the Los Angeles Superior Court (Code Civ. Proc., § 392 et seq., and LASC Local Rule 2.0, subds. (b), (c) and (d)).

Dated: __May 12, 2010__

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

---

## PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet form CM-010.

4. Complete Addendum to Civil Case Cover Sheet form LACIV 109 (Rev. 01/07), LASC Approved 03-04.

5. Payment in full of the filing fee, unless fees have been waived.

6. Signed order appointing the Guardian ad Litem, JC form FL-935, if the plaintiff or petitioner is a minor under 18 years of age, or if required by Court.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

| SHORT TITLE: | CASE NUMBER |
|---|---|
| ANDAY v. CHASE HOME FINANCE, et al. | |

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review (Cont'd.)** | Writ of Mandate<br>(02) | ☐ A6151   Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152   Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153   Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review<br>(39) | ☐ A6150   Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade<br>Regulation (03) | ☐ A6003   Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007   Construction defect | 1., 2., 3. |
| | Claims Involving Mass<br>Tort (40) | ☐ A6006   Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035   Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental  (30) | ☐ A6036   Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage<br>Claims from Complex<br>Case (41) | ☐ A6014   Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement<br>of Judgment<br>(20) | ☐ A6141   Sister State Judgment | 2., 9. |
| | | ☐ A6160   Abstract of Judgment | 2., 6. |
| | | ☐ A6107   Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140   Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114   Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112   Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033   Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above)<br>(42) | ☐ A6030   Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040   Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011   Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000   Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance(21) | ☐ A6113   Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br>(43) | ☐ A6121   Civil Harassment | 2., 3., 9. |
| | | ☐ A6123   Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124   Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190   Election Contest | 2. |
| | | ☐ A6110   Petition for Change of Name | 2., 7. |
| | | ☐ A6170   Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100   Other Civil Petition | 2., 9. |

**CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION**

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF LOS ANGELES**

North Central District
600 East Broadway
Glendale, CA 91206

RESERVED FOR CLERK FILE STAMP

**ORIGINAL FILED**

JUN 2 1 2010

**LOS ANGELES**
**SUPERIOR COURT**

# NOTICE OF ORDER TO SHOW CAUSE
# RE FAILURE TO COMPLY WITH TRIAL
# COURT DELAY REDUCTION ACT

CASE NUMBER:

EC 0 5 3 1 3 5

## TO THE PLAINTIFF(S) AND/OR THEIR ATTORNEY(S) OF RECORD:

Pursuant to California Rules of Court, Rule 3.110, all complaints shall be served and a proof of service thereof shall be filed within 60 days of the date the complaint is filed, unless the defendant makes an appearance within that 60 days. Plaintiff's failure to meet this deadline may result in sanctions.

**PLEASE TAKE NOTE** that this matter is set for an order to show cause why the plaintiff should not be sanctioned for failure to comply with the rules described above on:

| Date: 9-16-10 | Time: 8:30 am | Dept.: GLENDALE NC – D/E |
| Address: **600 EAST BROADWAY, GLENDALE, CA 91206** | | |

At such time and place, the Court may (1) impose such sanctions as are authorized by law, including dismissal for failure to prosecute (Code of Civil Procedure Section 583.150 and Government Code Section 68608(b)) and (2) make further appropriate orders regarding the preparation of the case for trial.

**PLEASE TAKE FURTHER NOTICE** that no appearance is necessary at the hearing set forth above if there is (1) a proof of service filed and/or (2) an appearance in the action (i.e. by answer, demurrer, or motion contesting jurisdiction) by each named defendant BEFORE the date set for hearing.  Plaintiff's appearance is MANDATORY, however, if any named defendants remain unserved at the date set for the hearing.

Date: _____   JUN 2 1 2010

_____
Judge of the Superior Court
**Judge Mary Thornton House**

### CERTIFICATE OF SERVICE

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the NOTICE OF ORDER TO SHOW CAUSE RE FAILURE TO COMPLY WITH TRIAL COURT DELAY REDUCTION ACT upon each party or counsel named below:

☐   By depositing in the United States mail at the courthouse in Burbank, California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

☒   by personally giving the party a copy of this notice upon filing of the complaint.

| | |
| --- | --- |
| | |

Date: _____   JUN 2 1 2010

John A. Clarke, Executive Officer / Clerk

C. LUNA

By: _____, Deputy Clerk

NOTICE OF ORDER TO SHOW CAUSE RE FAILURE TO COMPLY WITH TRIAL COURT DELAY REDUCTION ACT

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF LOS ANGELES

Reserved for Clerk's File Stamp

COURHOUSE ADDRESS: **NORTH CENTRAL – GLENDALE**
**600 EAST BROADWAY**
**GLENDALE, CA 91206**

**ORIGINAL FILED**

JUN 2 1 2010

PLAINTIFF:

DEFENDANT:

**LOS ANGELES
SUPERIOR COURT**

CASE NUMBER: EC 053135

## NOTICE OF CASE MANAGEMENT CONFERENCE

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled at the courthouse address shown above on:

Date: **NOV 0 4 2010**   Time: **8:30 AM**   Dept: D **E**

Pursuant to California Rules of Court, rule 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least 15 calendar days prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order dismissing fictitious/unnamed defendants; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code § 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions, pursuant to LASC Local Rule 7.13, Code of Civil Procedure sections 177.5 575.2, 583.150, 583.360 and 583.410, Government Code section 68608, subdivision (b), and California Rules of Court, rule 2.2 et seq.

Dated: _____ JUN 2 1 2010 _____

_Mary Thornton House_

Judge of the Superior Court

**Judge Mary Thornton House**

## CERTIFICATE OF SERVICE

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the **Notice of Case Management** Conference upon each party or counsel named below:

☐ By depositing in the United States mail at the courthouse in Burbank, California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

☒ by personally giving the party a copy of this notice upon filing of the complaint.

Date: _____ JUN 2 1 2010 _____

John A. Clarke, Executive Officer / Clerk

By: _____ C LIMA _____
Deputy Clerk

**NOITCE OF
CASE MANAGEMENT CONFERENCE**

Cal. Rules of Court, rule 3.720-3.730
LASC Local Rules, Chapter Seven

# THE SUPERIOR COURT
## NORTH CENTRAL DISTRICT

**ORIGINAL FILED**

JUN 2 1 2010

### CASE NO. ___EC 0 5 3 1 3 5___
### TO ATTORNEY OF RECORD

**LOS ANGELES
SUPERIOR COURT**

## ASSIGNED TO JUDGE ☐ DAVID MILTON ☒ LAURA MATZ
### FOR ALL PROCEEDINGS, IN DEPT. NCD/NCE
### 600 EAST BROADWAY, GLENDALE CA 91206

Your case has been assigned to the Trial Delay Reduction Program in Los Angeles County Superior Court. It is your responsibility as an attorney to immediately familiarize yourself with the detailed provision of Chapter 7, Los Angeles County Superior Court Rules. A reading of this Notice does not relieve you of these rules. The following critical provisions are summarized for your assistance in avoiding immediate and severe rule violations.

## APPLICATION
The Chapter 7 Rules shall apply to all civil cases filed in or transferred to the North Central District.

## PRIORITY OVER OTHER RULES
All Court policy statements and policy manuals will be applicable, if appropriate, except to the extent that they are inconsistent with Chapter 7 Rules or any Orders made thereunder.

## TIME STANDARDS
Cases filed in or transferred to the North Central District will be subject to processing under the following standards:

| | |
|---|---|
| Complaints: | All Complaints shall be served and a proof of service shall be filed within 60 days of filing. |
| Cross-Complaints: | Without leave of Court first being obtained, no cross complaint may be filed by any party after their answer is filed. Cross-complaint and a proof of service shall be filed within 30 days of the filing date. |
| Discovery Regulation: | The Court shall regulate the timing, scope and completion of all discovery, including discovery pursuant to Code of Civil Procedure Section 2034 consistent with Government Code Section 8616 ET. SEC. Counsel should |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
ALTERNATIVE DISPUTE RESOLUTION INFORMATION PACKAGE
[CRC 3.221 Information about Alternative Dispute Resolution]

The plaintiff shall serve a copy of this Information Package on each defendant along with the complaint (Civil only).

**What Is ADR:**
Alternative Dispute Resolution (ADR) is the term used to describe all the other options available for settling a dispute which once had to be settled in court. ADR processes, such as arbitration, mediation, neutral evaluation (NE), and settlement conferences, are less formal than a court process and provide opportunities for parties to reach an agreement using a problem-solving approach.

There are many different kinds of ADR. All of them utilize a "neutral", an impartial person, to decide the case or help the parties reach an agreement.

**Mediation:**
In mediation, a neutral person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

   **Cases for Which Mediation May Be Appropriate**
   Mediation may be particularly useful when parties have a dispute between or among family members, neighbors, or business partners. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

   **Cases for Which Mediation May Not Be Appropriate**
   Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

**Arbitration:**
In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. *Nonbinding arbitration* means that the parties are free to request a trial if they do not accept the arbitrator's decision.

   **Cases for Which Arbitration May Be Appropriate**
   Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

   **Cases for Which Arbitration May Not Be Appropriate**
   If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

**Neutral Evaluation:**
In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

   **Cases for Which Neutral Evaluation May Be Appropriate**
   Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

   **Cases for Which Neutral Evaluation May Not Be Appropriate**
   Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

**Settlement Conferences:**
Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

## LOS ANGELES SUPERIOR COURT ADR PROGRAMS

CIVIL:

- **Civil Action Mediation** (Governed by Code of Civil Procedure (CCP) sections 1775-1775.15, California Rules of Court, rules 3.850-3.868 and 3.870-3.878, Evidence Code sections 1115-1128, and Los Angeles Superior Court Rules, chapter 12.)
- **Retired Judge Settlement Conference**
- **Neutral Evaluation** (Governed by Los Angeles Superior Court Rules, chapter 12.)
- **Judicial Arbitration** (Governed by Code of Civil Procedure sections 1141.10-1141.31, California Rules of Court, rules 3.810-3.830, and Los Angeles Superior Court Rules, chapter 12.)
- **Eminent Domain Mediation** (Governed by Code of Civil Procedure section 1250.420.)
- **Civil Harassment Mediation**
- **Small Claims Mediation**

FAMILY LAW (non-custody):

- **Mediation**
- **Forensic Certified Public Accountant (CPA) Settlement Conference**
- **Settlement Conference**
- **Nonbinding Arbitration** (Governed by Family Code section 2554.)

PROBATE:

- **Mediation**
- **Settlement Conference**

### NEUTRAL SELECTION

Parties may select a mediator, neutral evaluator, or arbitrator from the Court Party Pay Panel or may hire someone privately, at their discretion. If the parties utilize the Pro Bono Mediation or Arbitration Panel, the parties will be assigned on a random basis the name of one neutral who meets the case criteria entered on the court's website.

### COURT ADR PANELS

**Party Pay Panel**   The Party Pay Panel consists of mediators, neutral evaluators, and arbitrators who have achieved a specified level of experience in court-connected cases. The parties (collectively) may be charged $150.00 per hour for the first three hours of hearing time. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing.

**Pro Bono Panel**   The Pro Bono Panel consists of trained mediators, neutral evaluators, and arbitrators who have not yet gained the experience to qualify for the Party Pay Panel, as well as experienced neutrals who make themselves available pro bono as a way of supporting the judicial system. It is the policy of the Court that all pro bono volunteer mediators, neutral evaluators, and arbitrators provide three hours hearing time per case. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing.

**Private Neutral**   The market rate for private neutrals can range from $300-$1,000 per hour.

### ADR ASSISTANCE

For assistance regarding ADR, please contact the ADR clerk at the courthouse in which your case was filed.

| COURTHOUSE | ADDRESS | ROOM | CITY | PHONE | FAX |
|---|---|---|---|---|---|
| Antonovich | 42011 4th St. West | None | Lancaster, CA 93534 | (661)974-7275 | (661)974-7060 |
| Chatsworth | 9425 Penfield Ave. | 1200 | Chatsworth, CA 91311 | (818)576-8565 | (818)576-8687 |
| Compton | 200 W. Compton Blvd. | 1002 | Compton, CA 90220 | (310)603-3072 | (310)223-0337 |
| Glendale | 600 E. Broadway | 273 | Glendale, CA 91206 | (818)500-3160 | (818)548-5470 |
| Long Beach | 415 W. Ocean Blvd. | 316 | Long Beach, CA 90802 | (562)491-6272 | (562)437-3802 |
| Norwalk | 12720 Norwalk Blvd. | 308 | Norwalk, CA 90650 | (562)807-7243 | (562)462-9019 |
| Pasadena | 300 E. Walnut St. | 109 | Pasadena, CA 91101 | (626)356-5685 | (626)666-1774 |
| Pomona | 400 Civic Center Plaza | 106 | Pomona, CA 91766 | (909)620-3183 | (909)629-6283 |
| San Pedro | 505 S. Centre | 209 | San Pedro, CA 90731 | (310)519-6151 | (310)514-0314 |
| Santa Monica | 1725 Main St. | 203 | Santa Monica, CA 90401 | (310)260-1829 | (310)319-6130 |
| Stanley Mosk | 111 N. Hill St. | 113 | Los Angeles, CA 90012 | (213)974-5425 | (213)633-5115 |
| Torrance | 825 Maple Ave. | 100 | Torrance, CA 90503 | (310)222-1701 | (310)782-7325 |
| Van Nuys | 6230 Sylmar Ave. | 418 | Van Nuys, CA 91401 | (818)374-2337 | (818)902-2440 |

For additional information, visit the Court ADR web application at www.lasuperiorcourt.org (click on ADR).

Partially Funded by the Los Angeles County Dispute Resolution Program

LAADR 005 (Rev. 08/08)
LASC Approval 10-03

1  VICTOR E. HOBBS, State Bar No. 80191
   THE LAW OFFICES OF VICTOR E. HOBBS
2  17981 Sky Park Circle, Suite C
   Irvine, CA 92614
3  TEL: (949) 221-9700
   FAX: (949) 221-9707

**ORIGINAL FILED**

JUN 2 1 2010

**LOS ANGELES
SUPERIOR COURT**

8  Attorneys for Plaintiffs, the General Public, and the Proposed Class

9        SUPERIOR COURT OF THE STATE OF CALIFORNIA

10              COUNTY OF LOS ANGELES

| | |
|---|---|
| Catalina Anday , individually and All Others Similarly Situated, and on Behalf of the General Public,<br><br>Plaintiffs,<br><br>vs.<br><br>Chase Home Finance, LLC, Quality Loan Services Corp., and Does 1-100, Inclusive,<br><br>Defendants. | Case No. __EC 053135__<br><br>**COMPLAINT FOR DAMAGES**<br><br>1.    Fraud and Intentional Misrepresentation<br>2.    Deceit Pursuant to Cal. Civ. Code §1710-1711<br>3.    General Negligence in Not Avoiding Foreclosure or Modifying Loan Terms<br>4.    Negotiating In Bad Faith, and Violation of C.C.P. § 1161 et seq, and Relief From Foreclosure (C.C.P. § 1179)<br>5.    Concealment<br>6.    Strict Products Liability: Manufacturing or Design Defect<br>7.    Strict Products Liability: Failure to Adequately Warn<br>8.    Unlawful Business Practices in Violation of California Business & Professions Code § 17200, et seq.<br><br>JURY TRIAL DEMANDED<br><br>Date Filed: _____ |

25       Plaintiff Catalina Anday  brings this action as stated herein against Defendants Chase

26  Home Finance, LLC ("Servicer"), Quality Loan Services Corp. ("Trustee"), and Does 1 through

27  100 (collectively referred to as "Defendants").  All plaintiffs bring representative claims as

28  Private Attorney Generals under Cal. Bus. & Prof. Code §17200 *et seq.* and Cal. Civ. Code §1750

COMPLAINT

*et seq.*, and reserve the right to certify such claims as class action claims under California Code of Civil Procedure §382.  The plaintiff brings these representative claims for violation of the Unfair Competition Law and Consumer Legal Remedies Act on behalf of all others similarly situated pursuant to Cal. Civil Code §17200 *et seq.* and Cal. Civ. Code §1750 *et seq.*  Finally, the plaintiff brings individual claims for Fraud, Deceit, and other claims as described herein.

## INTRODUCTION

1.     This case concerns an industry where the Legislature finds and declares that homeowners whose residences are in foreclosure have been subjected to fraud, deception, and unfair dealings by lenders, mortgage brokers, lender representatives and others working in concert with the lenders.  During the time period between the commencement of foreclosure proceedings and the scheduled foreclosure sale date, homeowners in financial distress, especially the poor, elderly, Hispanic, and financially unsophisticated are vulnerable to importunities inducing or compelling homeowners to unwillingly relinquish ownership rights in their home.  Origination of these loans and mortgages, and procedures from the time of mortgage sale origination through foreclosure are complete through the use of schemes which often involve oral and written misrepresentations, deceit, intimidation, and other unreasonable commercial practices.

2.     **In fact, California Civil Code § 1695(b) states in pertinent part as follows:**

a.     **"The Legislature declares that it is the express policy of the state to preserve and guard the precious asset of home equity, and the social as well as the economic value of homeownership." (emphasis added).**

3.     The plaintiff's complaint asserts that the defendants created a transaction in which Chase Home Finance, LLC held itself out to the plaintiff as a lender or in substantial control of Plaintiffs' mortgage product.  In fact, Chase Home Finance, LLC was the lender, and Chase Home Finance, LLC paid itself a substantial fee out of the ongoing monthly proceeds of the loan.  The plaintiff alleges that the terms of the mortgage loan were grossly unfair and inequitable.

4.     The complaint claims that the defendants' acts constitute violations of State laws, Products Liability violations, and amount to Fraud, Negligence, and other common law wrongs in the making of the loan, the making of false loan modification negotiations, and extending to the present.  Having the right to rescind the loan and/or properly rescinded the transaction and the purported Lender's security interest in the plaintiff's home, the plaintiff asks that this Court declare the loan, and the mortgage and the proof of claim are invalid.  The plaintiff also asks that the Court order payment to the plaintiff of damages, costs and attorneys fees for the defendants' unlawful and unfair acts.

5.     This case has to do with protecting the public and to promote respect and confidence in the lending profession against any willful breach of a lender's conduct, or willful abuse of the lender's trust and confidence.  Defendants market themselves as lenders, collecting lender fees and providing monthly billing for mortgages and work with mortgage brokers as a quasi joint venture in selling and distributing mortgage products.  Defendants' mortgage broker relationships are required to hold an active California Department of Real Estate (DRE) licenses that market themselves as real estate lending experts and require a Fiduciary Duty is obligated to the purchaser of the mortgage products.  These defendants use manipulative and coercive tactics to earn inflated and unconscionable fees by selling clients on defective mortgages that defendants intend to inflate in order to raise the value of those mortgages for the benefit of defendants, despite any oral conversation otherwise.  These Defendants operate at the expense of vulnerable consumers looking for expert advice to avoid dangerous mortgage products at a good price with properly licensed lenders that hold a fiduciary duty to these consumers.

6.     Defendants work in tandem with each other to defraud or mislead prospective clients.  Despite the fact that industry standards and the law expressly recognize the unsuitability of certain mortgage products and the unsuitability of lenders abusing their position of power for their own pecuniary gain, the Defendants ignore these policies as a business practice, and turn a "blind eye" toward the unscrupulous tactics used by the Defendants to dangerous product design, wrongful origination and collection (foreclosure)

2

1   tactics, in violation of their responsibilities of decency and honesty to their clients.  The

2   Defendants have been repeatedly warned by the plaintiff about the abuse as an unlawful and

3   unacceptable business practice.

4          7.     These warnings went unheeded by the Defendants.  Because of the lucrative

5   nature of real estate foreclosure transactions, the Defendants continue to conspire amongst

6   themselves to do the dirty work of marketing and retaining as clients homeowners while

7   willfully disregarding laws pertaining to the defendants' lending and foreclosure practices.

8   More recently these Defendants have used hidden tactics in pretending to negotiate in good

9   faith a "loan modification" for homeowners that will assist the homeowner during their time of

10   "financial hardship" when these lenders' true intent is to use the information provided in

11   confidence to the lender for the lenders' benefit in "stealing" a homeowner's home.  This

12   action seeks to enjoin all defendants from engaging in deceitful, unethical and unconscionable

13   legal business practices, and to provide for restitution to the victims.

14         **NATURE OF DEFENDANTS' COMMON BUSINESS PRACTICE**

15          8.     This action is premised upon Defendant's common business practice which

16   designs and markets mortgage products and the collection of fees from homeowners in order to

17   generate fees and avoid overall regulations for themselves by threatening unsophisticated and

18   unknowledgeable homeowners identified and profiled through their marketing efforts with

19   prospective litigation, foreclosure and overreaching collection tactics despite the unsuitability

20   of loans produced and distributed to these homeowners in mass production and sales.  Under

21   the pretext and masquerading as lenders fighting on the "clients' behalf," the Defendants

22   obtain business and personal financial information, and then use that information to target

23   prospects to higher than agreed to fees and payments and use of intimidation strategies to

24   collect more than is rightfully earned by Defendants.  Based on the information they acquire

25   through their position of trust and confidence, they then coerce, and confuse targeted

26   prospective homeowners to pay more fees than an unsuspecting client would agree to by

27   misrepresenting the advantages and disadvantages of prospective clients' loan qualifications,

28   or other relevant facts, and the purported advantages of using the Defendants over other

1    lenders, and being placed into inferior and avoidably dangerous loan products when

2    homeowners qualify for better loan products and terms.

3         9.    The scheme begins with the Defendants' marketing themselves as lenders,

4    "direct lenders", or mortgage brokers in the real estate and mortgage industry fighting for the

5    homeowner and making such representations as "when the lenders compete, you win"

6    inferring that lender competition and use of defendants' services would get the homeowner the

7    best loan product available. This is often done through selling homeowners on the trust and

8    confidence of defendants' skills and abilities. The use of mortgage broker companies as a

9    form of marketing encourages homeowners to trust licensed real estate agents and mortgage

10   brokers to believe that these defendants hold a superior knowledge and skill in the real estate

11   and mortgage profession not readily available to homeowners. Prospective clients usually

12   receive a telephone call or mailer prompting conversations between the homeowner and the

13   defendants where the defendants are in one way or another directed to contact prospective

14   clients by phone where the benefits of using defendants' loan products and loan company is

15   solicited. In their interview speeches with prospective clients, which are well-rehearsed and

16   uniform, Defendants fail to inform prospective clients that the homeowner may not be able to

17   afford the long term monthly obligations, and are part of a larger scheme to induce

18   homeowners to signing loan documents with defendants so that defendants pecuniary gains are

19   held paramount to homeowners needs. Defendants' business practices are designed to

20   fraudulently profile prospective clients through use of real estate and mortgage broker

21   agencies, as well as through direct marketing, for the sale of dangerous mortgage products

22   where the default on these products are foreseeable and avoidable.

23        10.   Such meetings and interviews are falsely billed as a "free" initial interview with

24   a mortgage or financial consultation specialist when in fact these meetings consist of little

25   more than a hard-sell sales pitch by loan sales representatives for the sale of loans despite a

26   homeowner's ability to make payments and is nothing more than an unconscionable vehicle to

27   obtain financial information from prospective clients and negotiate unconscionable terms of

28   inherently dangerous loan products, which includes, but is not limited to falsely portrayed

4

COMPLAINT

1   discounted fees, and low monthly payments.  To ensure the success of the sales technique of

2   the sales representative and the receipt of prospective homeowners' personal and business

3   financial information, Defendants proffer themselves as offering the lowest loan payments in

4   the industry.  Alternative less dodgy mortgage products are disregarded completely and never

5   placed in front of the homeowner as an option or reasonable alternative.

6       11.    Once prospective clients are convinced that there is no other fairer or better loan

7   product or authority in lending and a prospective client is convinced to work with the

8   defendants based on false representations, these prospective clients are asked to provide

9   financial information regarding their income, and ability to pay, which are most often

10  shredded, thrown in the trash, and/or in some other fashion disregarded and in any event are

11  not used to qualify a homeowners' ability to make long term loan payments.  Prospective

12  clients are placed in inferior loan terms than they actually qualify for and are repeatedly called

13  to have general discussions about their businesses and their related finances, so that these

14  Defendants know exactly who possesses the financial wherewithal to pay higher upfront fees

15  and exactly how much to mark up these fees and how much to ask for in these upfront fees

16  disguised as "no out of pocket expense mortgage loans."  Once the prospective clients'

17  financial information is in the hands of Defendants, they misuse it to get or "cherry pick" their

18  best prospects and mislead and coerce the prospective clients to pay larger than normal or

19  discounted fees and higher than normal interest rates in order to sell them on precarious terms

20  that financially benefits the defendants more than the homeowner.

21      12.    One specific approach used by Defendants to improperly induce prospective

22  client to sign with Defendants are statement that "if we can't get it for you then it just doesn't

23  exist," when, in fact, Defendants have no such certainty in making those claims.  Another

24  specific misleading sales tactic used were statements that fees offered represent a discount

25  given only to defendants' clients in order to induce prospective clients into believing they were

26  getting a "deal" in comparison to what other lenders would charge for the same or similar

27  services, or to induce the homeowner into believing they were getting the best possible rate

28  and/or product in the market place.  This "deal" was used to mislead, induce, confuse, and

coerce prospective clients into paying large upfront fees and large hidden fees in order to be accepted into a program that would allow for a "discount" of the normal fees when Defendants knew or intended to inflate their fees in order to compensate for the difference that the Defendants would normally charge.

13.     Defendants tend to target predominantly black or Hispanic, low income neighborhoods to make their hard-sell sales pitch to since this targeted class of individuals are usually of limited education and sophistication and have little understanding of financial matters and documents.

14.     Most client communications take place over the phone or by door-to-door sales.

15.     Defendants originated loans through several means including wholesale and retail sales, either directly to consumers or indirectly through brokers or loan officers.

16.     The mortgage market in the last few years has changed from a portfolio of loans retained by lenders to more of a "Wall Street" driven environment where loans were sold on a secondary mortgage market at premiums of usually more than the original principal balance of the loan.  Then the secondary market would package or "pool" these loans for sale to investors on the open market.  This premium on the secondary market caused lenders to gain a greater security in profitability and a quicker opportunity in receiving those profits **with little to no risk for the lender.**

17.     Because of a heightened awareness of these profits in the secondary market Defendants viewed borrowers as nothing more than a means for producing more loans (strictly volume), and ,in turn, quick profitability, with little to no regard to a borrower's long term ability to afford the mortgage and sustain the homeownership.  Usually this "new view" entails selling borrowers on inferior loan products and misrepresenting to those borrowers that the low monthly "teasers" rates are "fixed" rates, and misrepresenting or omitting any disclosure of a future increase in the rate or possible negative amortization function; routinely soliciting the same borrowers months later, and placing "unqualified" borrowers into "low or no documentation" loans urging homeowners to encumber up to 100% of their homes.

18.     In fact, this drive solely geared for profitability in the secondary market created high-pressure sales tactics, where underwriting standards were relaxed, high commissions were paid to mortgage brokers and others throughout the product distribution chain for nothing more than inducing homeowners to signing loans at higher rates and terms than the homeowner would actually qualify for, misleading homeowners into believing that non-principal paying "teaser" rates were fully amortized rates including principal and interest payments, not disclosing payment shock issues, misleading homeowners into believing that they would actually qualify for a refinance without disclosing the risks of refinancing given a borrowers' high loan-to-value and low FICO score, and not distinguishing to borrowers the difference between "payment rate" versus the "interest rate."

19.     The only monthly payments that appeared on the mortgage documents were the minimum payment amount.  In other words, the documents provided to the borrower assumed the borrower would make only the minimum payment.  Thus the borrower would not know the monthly payment necessary to make a payment that would cover accruing interest and principal until the borrower received the first statement after the expiration of the teaser rate, well after the loan documents were signed.

20.     This fraudulent, oppressive, and unfair method of mortgage loan sales and the use of these avoidably dangerous products usually extend through to loan modification negotiations and eventually foreclosure procedures.  Lenders directly or through lender representatives are given an opportunity to rectify the situation by offering a loan modification to these homeowners and entering into a "good faith" negotiations with distressed homeowners.  This opportunity is abused, the product defect is hidden, and the homeowner is duped into believing that, despite being taken advantage of in the origination of the imperfect mortgage, that there is nothing the lender or lender representative can do for the borrower, and that the homeowner has no further legal rights in the matter and no other option but to loose their home, which usually sells back to the lender.

21.     Lenders, Servicers, Investment Bankers, Corporate Trustees of Pooled Loans have substantially more money than the average homeowner and are in a better position to

7

1    maintain and rent out the property until equity values in the market place rise in a second

2    opportunity for profitability through a real estate sale of the same property.  In today's market

3    of lenders buying out other lenders at discounts and succeeding these other lenders we have

4    noted lenders (such as Capital One, N.A.) buying out other lender's mortgage related assets

5    (such as Chevy Chase Bank, FSB) for less than 5 cents on the dollar (roughly $12 billion in

6    mortgage assets bought for $520 million).  Where these lenders or lender representatives have

7    profited at greater than the face value of the loan, these same lending parties are given an extra

8    ordinary opportunity to profit yet again all stemming from the unconscionable, unlawful and

9    unethical tactics used in originating the faulty loan product or the false presumption to workout

10   a loan modification.  In other words, a homeowner with $1 million dollars in secured debt

11   could have his mortgage product procured by another lender/servicer or distributor of the

12   mortgage product for under $50,000 giving rise to an increased motive amongst lenders and

13   lender representatives to "steal" homes from homeowners in today's market and realize greater

14   profits today with little to no remorse for the damage caused by a mortgage product or

15   fraudulent sales and distribution approaches used against the homeowner.

16          22.    These lenders or lending relationships have unfairly packaged these loans sold

17   them to the homeowners for greater than normal fees that the homeowner pays, "pooled" the

18   loans for sale on the secondary market where greater than 100% plus premiums are earned on

19   the loan, in some cases **hold the servicing rights to these loans in order to gain monthly**

20   **residuals on those loans,** and are now placed into another chain of profitability by reselling

21   the homeowner's home in the real estate market.  These lenders or lending relationships are

22   keenly aware of the minimal risk of litigation by consumers who have been so economically

23   stripped that the likelihood of the consumer's ability to retain a law firm in this matter is less

24   likely than the homeowner "walking away from the home."  Lenders used this risk assessment

25   in the design of abnormally dangerous mortgage products and again use this risk assessment in

26   negotiating loan modifications in bad faith in a last ditch attempt to unlawfully reclaim the real

27   property for greater profitability at the consumer's detriment.

28

8

COMPLAINT

23. The lending policies and lender and servicer duties are expressly laid out and readily available on the FDIC, OTS, and other regulatory websites publicly located on the internet. Nonetheless, the Defendants' sales tactics engage in the conduct described above without regard to these laws and needs and routinely disregard the law set by the State of California and the Federal Government so that the Defendants' pecuniary gains can be managed and maintained "under the radar" of the State and Federal required regulations.

24. All Defendants have either known or should have known for a substantial period of time that consumers are prone to confusion and harm caused by their marketing and/or collection practices and by these defective mortgage products. All Defendants have also been on notice or should have been on notice that state and federal regulators disapprove of the operation of a lending practice that uses undue influence (intimidation) or unfair advantage to take advantage of clients. In fact, federal and state agencies have warned, in pertinent part, that:

"Where lending institutions exercise undue influence over clients or take unfair advantage of clients, discipline is appropriate." - FTC, Supervisory Insights

Defendants have placed commissions and profits above all else, and continue the practice of overreaching and harassing solicitation and collection tactics with little to no regard for correcting the problems they substantially control.

25. This action seeks to enjoin Defendants' unfair, illegal and/or fraudulent business and marketing practices, as well as Defendants' practice of misrepresenting both the appropriateness of fees for prospective clients and Defendants' expertise, credentials, and background, and improper foreclosure. This action also seeks the recovery of restitution and disgorgement of Defendants' ill-gotten gains including, but not limited to, profits earned on fees collected. Plaintiff brings claims for Fraud, Deceit, and other claims as set forth below.

COMPLAINT

### JURISDICTION AND VENUE

26.     This Court has jurisdiction over this action pursuant to California Code of Civil Procedure § 410.10.  In the aggregate, the damages caused to Plaintiffs and the general public exceeds the jurisdictional minimum of this Court.

27.     Venue is proper in the County of LOS ANGELES pursuant to Code of Civil Procedure §395.5 because, as detailed herein, one or more of Defendants' contracts were negotiated and entered into in this County, Defendants and their agents received substantial compensation from the collection of mortgage fees, and other fees in this County by doing business here, and Defendants made numerous misrepresentations and/or omissions which had effect in this County, and the mortgage product itself was sold and/or affects real and personal property in this County.  Additionally, this court is the proper Venue to bring this action because one or more of the violations alleged herein arose within the County of LOS ANGELES.

### PARTIES

#### Individual Plaintiffs

28.     Loan Consumers or homeowners looking for mortgages are a segment of our society vulnerable to financial abuse.  Plaintiffs are real estate and mortgage consumers; they often have fixed or limited assets and income, and tend to be in need of financial advisory services, harmless mortgage products, and are susceptible to undue influence.

#### Catalina Anday

29.     Plaintiff is a California resident and has held her subject property located at 408 S. Chevy Chase Drive  Glendale, CA 91205  since on or about January 4, 2006.

30.     Plaintiff is a low to middle income individual.

31.     Plaintiff is a immigrant to the United States and speaks mediocre English.

32.     On or about January 2006, plaintiff executed a contract that was drafted by BC BANCORP for the benefit of BC BANCORP.  The contract was signed by Plaintiff on the detrimental reliance that Defendants had relayed all the proper information to plaintiff and that

COMPLAINT

1  as a state licensed lender in a position of trust and confidence it owed a fiduciary duty to

2  Plaintiff.

3     33.    The general public and other home owners have been misled and deceived by

4  the acts and practices alleged herein could sue the named Defendants in their own right, but in

5  many cases are unable to do so because they lack access to legal services, and reside in various

6  areas of California.  Plaintiffs seek injunctive relief and restitution for the general public and

7  those companies who took the time to properly conduct real estate and mortgage activities, and

8  on behalf of others similarly situated and the general public, pursuant to California Business &

9  Professions Code § 17200, *et seq.* and California Civil Code § 1750, *et seq.*

10                          **Defendants**

11                  **Chase Home Finance, LLC.**

12     34.    Plaintiff is informed and believes and thereon alleges that at all relevant times

13  Defendant Chase Home Finance, LLC by and through Washington Mutual ("Servicer") is an

14  entity working through California licensed mortgage brokers and that these brokers instructed

15  Plaintiff to sign mortgage documents at Chase Home Finance, LLC instruction, direction, and

16  control.  Chase Home Finance, LLC through brokers and through Chase Home Finance, LLC

17  directly purportedly transacts business in Southern California, and at all relevant times,

18  engaged in the acts described herein in LOS ANGELES County, California, among other

19  locales.  Chase Home Finance, LLC and Washington Mutual are one and the same entity since

20  Chase's recent procurement of Washington Mutual.

21     35.    Chase Home Finance, LLC uses brokers to market themselves and substandard

22  mortgage products throughout Southern California with misleading and deceptive claims that

23  Chase Home Finance, LLC is "one of America's most Trusted Lender." Chase Home Finance,

24  LLC goal through brokers in these solicitations is to obtain private financial information from

25  prospective clients, and thereafter collect large up-front and hidden monthly fees for the sale of

26  inherently dangerous and completely avoidable loan products.

27

28

**BC Bancorp**

36.    Defendant BC Bancorp ("BC Bancorp") at all relevant times was a licensed Department of Real Estate mortgage broker/lender.  On information and belief plaintiff thereon alleges that BC Bancorp is the key fee negotiator with clients for the origination of mortgage loans and sells themselves as a lender when the true fact is that BC Bancorp had a pre-existing relationship with Chase Home Finance, LLC/Washington Mututal to buy BC Bancorp's loans before they were even sold to a homeowner.  Nonetheless, BC Bancorp and Servicer is/are in the business of marketing and selling defective mortgage products throughout Southern California.

**Quality Loan Services Corp.**

37.    Defendant Quality Loan Services Corp. ("Trustee") at all relevant times is a purported Trustee for the beneficiary of the Investment Banker, and Servicer of the loan that provides for non-judicial foreclosure services within California.

**Does 1-100**

38.    The names of other Defendants, sued herein as Does 1-100, are presently unknown to Plaintiffs, who therefore sue such Defendants in this action by such fictitious names.  Each of the Defendants designated herein as a Doe is legally responsible in some manner for the unlawful acts referred to herein.  Plaintiffs will seek leave of the Court to amend this complaint to reflect the true names and capacities of the Defendants designated as Does 1-100 as and when their identities become known.

**All Defendants**

39.    Each Defendant was at all relevant times the co-conspirator, employee, servant, partner, joint venturer, successor, assign, aider or abettor of one or more other Defendants with respect to the wrongful conduct alleged herein and did encourage, facilitate, or assist in the commission of the unlawful acts alleged herein.  In addition, each Defendant used one or more of the other Defendants as its agent or conduit to advertise, negotiate, and collect fees.  Each was acting within the course and scope of said conspiracy, agency, employment and/or joint venture and with the permission and consent of each other, and each is responsible and liable

12

1   in some manner for the damages or injuries sustained or threatened to be sustained by

2   Plaintiffs.

3                            **Representative Allegations**

4        40.   Without prejudice to later expansion or modification, Plaintiffs in this action

5   bring both representative class action, and individual claims.  All Plaintiffs bring claims under

6   Cal. Bus. & Prof. Code §17200, *et seq.* and Cal. Civ. Code §1750, *et seq.* against all

7   Defendants.  Plaintiffs assert such claims as representative claims, and as Private Attorney

8   Generals, under Cal. Bus. & Prof. Code §17204 and Cal. Civ. Code §1781.  The purpose of

9   such a claim is to enjoin Defendants from engaging in the unfair business practices and false

10  advertising/solicitation and collection acts alleged in this Complaint, and to require Defendants

11  to restore to the affected members of the General Public all monies wrongfully obtained by

12  Defendants through their false advertising, overreaching foreclosure activities,  and unfair

13  business practices.  A Private Attorney General Action is necessary and appropriate because

14  Defendants have engaged in the wrongful acts, false advertising/solicitation, and improper

15  foreclosure/collection acts described herein as a general business practice.

16       41.   Finally, each of the individual Plaintiffs assert individual claims for Fraud,

17  Deceit,    and other claims as alleged below.

18       42.   Plaintiffs explicitly reserve the right to add additional class action claims at a

19  later time, if appropriate.

20                            **Individual Allegations**

21       43.   This action arises out of avoidably dangerous mortgage products with

22  foreseeable loan defaults and foreclosure of a homeowner's home as a foreseeable

23  consequence of certain types of mortgage products and the express and implied promises made

24  by Defendants and the Plaintiff detrimental reliance on those promises related to lending

25  matters which were started within the last 4 years.

26       44.   At all times relevant hereto, defendants regularly extended or serviced

27  consumer credit which is payable by agreement in more than four installments or for which a

28  finance charge is or may be required.

45.     At some time prior to January 2006, the debtor was solicited by BC Bancorp/Chase Home Finance, LLC through the use of purported "financial consulting experts."

46.     Plaintiffs allege that they were one of many solicited to meet defendants' goals of not only to originate high mortgage loan volumes but also to originate loans with above-market interest rates that these defendants knew or should have known were inherently dangerous loan products.

47.     Plaintiffs allege that defendants viewed plaintiffs as a loan origination tool with little to no regard to plaintiffs' long-term ability to afford and sustain the loan and homeownership, which was part one of a two part a scheme created and/or maintained with the knowledge, approval and ratification of one or more of the other defendants.

48.     Defendants implemented deceptive schemes through misleading marketing practices designed to sell risky and costly loans to plaintiffs, the terms and dangers of which plaintiffs did not understand, including being sold on an adjustable loan with a very low teaser rate, the true terms of which were never properly disclosed.

49.     Plaintiffs were routinely solicited to refinance out of the loan a few months later into a "lower" payment plan or other or more defective mortgage product.

50.     Despite informing defendants of plaintiff's true income, Defendants placed plaintiffs into a "low- or no-documentation" loan product giving the defendants, and each of them the opportunity for quick underwriting or no underwriting with little to no review of plaintiffs actual ability to repay the loan.

51.     Defendants worked around underwriting guidelines by misstating plaintiff's income in order to get plaintiffs to qualify for a loan.

52.     Defendants encouraged plaintiffs to encumber their property up to 100% (or more) of the assessed value merely because the loan products allowed for this type of encumbrance.

53.     Plaintiffs believe and allege that the original Note holder sold the plaintiffs' mortgage on the secondary market and that the originating entity has been paid in full and that

14

sale of the loan on multiple occasions has generated profitability for each seller of the wrongful loan at greater than the face value of the Note and therefore the loan has been properly "paid off."

54.   Defendants represented that they were a "Wall Street" secured investment and that the plaintiffs had the backing and security of "Wall Street" behind them.

55.   Plaintiffs allege that defendants, and each of them, were engaged in an illegal scheme the purpose of which was to execute weary loans secured by real property in order to make commissions, kick-backs, illegal undisclosed yield spread premiums, and undisclosed profits by the sale of any instruments arising out of the transaction.

56.   Plaintiffs allege that based upon the foregoing representations of defendants, and each of them, plaintiffs did in fact rest their trust in the representations of defendants, and each of them, and that such trust was reasonable.

57.   Plaintiffs allege that defendants, and each of them, presented a loan product to plaintiffs whereby they represented that they did qualify for underwriting, and that the loan was within plaintiffs' personal financial needs and limitations.  These statements were made despite the confidential financial information that plaintiffs shared with defendants which could only express the opposite.

58.   Plaintiffs allege that defendants, and each of them, at all relevant times controlled the underwriting guidelines and at minimum reviewed plaintiffs' credit report reflecting prior payments on other obligations and that the amounts of debt incurred and that the other payment amounts were much less of a monthly obligation than Defendant's product purported to create for Plaintiffs' long term abilities (to sustain in this loan product).

59.   Plaintiff acquired the loan by virtue of the said funding based on defective or inherently dangerous loan products, the representations of defendants, and each of them, that the loan was the best they could obtain for plaintiffs, and that the loan was well within plaintiffs' financial needs and limitations.

15

COMPLAINT

60.     Plaintiffs allege that defendants, and each of them, had a duty to disclose the true cost of the loan which was made to plaintiffs, and the fact that plaintiffs could not afford the loan in the first instance.

61.     Plaintiffs are informed and believe and thereupon allege that defendants, and each of them, represented to plaintiff that defendants, and each of them, were working for the benefit of plaintiffs and in their particular best interest to obtain for them the best loan and loan modification product at the best rates and payments available.

62.     That at the time defendants, and each of them, made the foregoing false representations to plaintiffs they knew that they were untrue and that these representations were material representations.

63.     That the foregoing representations were made in order to induce plaintiffs to act on and take the said loan(s) or loan modification products in order for defendants to make a substantial amount of money thereby and there from.

64.     Plaintiffs were induced to and did take this loan based on the said representations.

65.     The plaintiffs were induced to rely and did rely on the representations of these defendants through deception and their reliance was justified as they believed that defendants, and each of them, were working for them and in their best interest, and on the belief that a bank/lender would not lend money that could only end up in default.

66.     Eventually part two of the two part scheme took life when months later, well past the execution of the loan documents, the plaintiffs finally realized the detriment associated with defendants' loan products, plaintiffs would then approach defendants for a loan modification.  Defendants verbally promised a modification and subsequently rejected said offer after the plaintiffs fully complied with defendants' requests for financial information.

67.     Plaintiffs are informed and believe and thereon allege that after the loan origination and execution their loans were sold on multiple occasions, bundled into a group of Trust Deeds and subsequently sold to investors as a "mortgage backed security", and that therefore none of these defendants, and each of them, owned this loan or Note and can not be

1    and are not the beneficiary, or lawfully appointed trustee, and have no right to declare a default

2    to cause notices of default to issue or to be recorded, or to foreclose on the plaintiff's interest

3    in the subject property.  Defendants, and each of them, were not the note holder or the Note

4    holder in due course or any beneficiary at any time in regards to this loan.

5         68.    Plaintiffs allege that defendants, and each of them, have represented to plaintiffs

6    and to third parties that they were the owner of the Trust Deed and Note as either the Trustee

7    or the Beneficiary regarding plaintiffs' real property.  Based on this representation they caused

8    a Notice of Default to be issued and recorded without disclosing their true role, and thereafter a

9    notice of intent to foreclose and finally they executed a foreclosure, which was completed,

10   permanently affecting plaintiffs' rights, title and interest in the subject property.  In fact,

11   plaintiffs allege that the promissory note which was executed by plaintiffs and which initially

12   formed a basis of a security interest in the subject property, was assigned in violation of Civil

13   Code section 2932.5 et seq. and as such the promissory note was rendered as non-negotiable

14   and no power of sale was conveyed with the note at the time of the assignment, and therefore,

15   defendants, and each of them, had no lawful security interest or assignment in the subject

16   property.

17        69.    Plaintiffs further allege that the foreclosure sale of the subject property was not

18   executed in accordance with the requirements of California Civil Code sections 1624, 2923.5,

19   2932.5 and Commercial Code section 3302 et seq.

20        70.    That by virtue of plaintiffs' reliance and the increased interest they were made

21   to pay- they have been damaged in the loss of their good credit and a higher payment and are

22   now being involved in litigation that they did not bargain for, all to their damage and injury.

23        71.    Plaintiffs have relied on the representations of these defendants and because of

24   this reliance has made various moves to avoid the foreclosure all to no avail, while defendants

25   knew all the time that they were deceiving plaintiffs and at all relevant times ONLY had a

26   secret intent to figure out if the defendants could make more money increasing the

27   homeowner's monthly payments or selling the home for immediate revenue on an opportunity

28   cost basis STRICTLY for the benefit of the defendants.

COMPLAINT

72.     Plaintiffs' reliance was justified based upon the false representations of defendants, and each of them, and had no reason to believe that a party representing a bank would go to such lengths to deceive and to convert plaintiffs' property.

73.     Plaintiffs allege that defendants, and each of them, knew at the time they made these representations to plaintiffs that they were untrue, and defendants knew at the time that they were attempting to foreclose on plaintiffs' Trust Deed and Note that they had no right to do so.

74.     Plaintiffs allege defendants, and each of them, by said fraudulent scheme intentionally and fraudulently intended to convert plaintiffs' right title and interest to their property, and any equity therein.

75.     Plaintiffs allege that due to their reliance on defendants' representations, and the fact that these mortgage products were placed into the stream of commerce, they have been damaged in an amount that currently exceeds $50,000 and will suffer additional costs of moving out of plaintiffs' property and the costs to relocate back to the subject property.

76.     Additionally, plaintiffs have been made to suffer deep and severe emotional distress, indignity, anxiety and humiliation all to their damage and injury in an amount the totality of which has not yet been fully ascertained, but in no event less than the jurisdiction limitations of this court.

77.     Plaintiffs allege that defendants had a superior bargaining strength over plaintiffs, and that plaintiffs were relegated only to the opportunity to adhere to the contract or reject it, that defendants drafted all of the documents related to the loan or loan modification, that defendants held or currently hold substantial control over the continued monthly distribution of mortgage products, that no negotiations were possible between plaintiffs and defendants, and that the contract was a contract of adhesion.

78.     Plaintiffs allege that the loan and all subsequent loan related offers were unconscionable in that repayment terms were unfair and unduly oppressive and falsely represented to plaintiffs that plaintiffs could not qualify for any other alternatives, and that plaintiffs could not qualify under any reasonable underwriting guidelines, and as such, the

18

performance of the plaintiffs is excused, and defendants, and each of them, cannot enforce the terms and conditions of the loan against plaintiffs, and any non-judicial foreclosure arising there from is void.

79.   Plaintiff has no experience beyond basic financial matters.

80.   Plaintiff was never explained the full terms of their loan, including but not limited to the rate of interest, how the interest rate would be calculated, what the payment schedule should be, the risks and disadvantages of the loan, the prepay penalties, the maximum amount the loan payment could rise to.

81.   Plaintiff alleges that defendants never made a true determination of whether plaintiffs would be able to make the payments as specified in the loan, and according to some mortgage products were not required to.

82.   Plaintiff's income was never truly verified, or was verified and disregarded.

83.   Plaintiff was rushed when signing the documents; the closing process provided no time for review and took minutes to accomplish.

84.   No adequate warnings were given related to the high probability of loan defaults on certain of defendants' loan products.

85.   Plaintiff could not understand any of the documents and signed them based on representations and the trust and confidence the plaintiffs placed in defendants.

86.   Plaintiff is a victim of Fraud in Factum since the forgoing misrepresentations caused plaintiffs to obtain the home loan without accurately realizing the risks, duties, or obligations incurred.

87.   At some time prior to January 2006, Plaintiff applied for a loan from defendant BC BANCORP resulting from defendants aggressive high-pressure sales tactics.

88.   The loan application was made through BC Bancorp.

89.   Defendants in concert with and pursuant to some business relationship with one or other Defendants, processed the loan application of the Plaintiff and completely avoided or disregarded the loan products' defects.

90.   On or about January 2006, the debtor entered into a consumer credit transaction where the Plaintiff and BC BANCORP extended consumer credit which was subject to a finance charge ("the Transaction").

91.   In the Transaction, only the debtor signed the subject loan Note.

92.   In the Transaction, BC BANCORP obtained a security interest in the form of a mortgage, signed by only the debtor against the residence.

93.   The residence is real property which serves as the Primary Residence of the debtor.

94.   The residence is owned by the debtor.

95.   Chase Home Finance, LLC claims that it is the current holder of the mortgage and/or other security interests taken in the first loan transaction, despite the fact that public records do not reflect any assignments from BC BANCORP to Chase Home Finance, LLC as required by law under Cal. Civ. Codes described below.

96.   The Plaintiffs have a continuing right to rescind the Transaction based on California Civil Codes and other areas of law related to fraudulent contract negotiations and/or products liability violations,

97.   Plaintiffs' credit score prior to this loan was excellent.

98.   Plaintiffs were seldom delinquent on any of their debts prior to accepting this loan product into their lives.

99.   This type of loan product could only lead to default as currently experienced by hundreds of thousands of harmed individuals throughout the USA.

100.   Plaintiff on information and belief alleges that Defendants not only hold a substantial control over the mortgage product type and an ability to correct any problem therein, but also have an opportunity to modify the loan for greater future financial benefit but Defendants' have decided to attempt foreclosure to immediately extinguish the plaintiff rights and legal remedies under these set of facts and to profit immediately from the illegal sale of the property rather than realize a reasonable profit over time through loan modification.

20

COMPLAINT

1     101.    Notwithstanding the trust and confidence entrusted on defendants and the duties

2    and obligations owed by defendants to plaintiff, plaintiff is informed and believes and thereon

3    alleges that defendants materially violated California and Federal laws and breached

4    defendants duties as described in detail herein.

5                        **INDIVIDUAL CLAIMS**

6                        **FIRST CAUSE OF ACTION**

7                    **(Fraud and Intentional Misrepresentation)**

8                    (Brought by Plaintiffs Against All Defendants)

9     102.    Plaintiff hereby incorporates each and every allegation contained above and all

10    previous paragraphs of all previous sections, inclusive, as though fully set forth herein.

11    103.    Plaintiff is informed and believes and thereon alleges that Defendant BC

12    Bancorp who made the representations herein, is the authorized agent of the defendants Chase

13    Home Finance, LLC, and Chase Home Finance, LLC and at the time of making the

14    representations herein alleged and at all times herein mentioned, was acting within the course

15    and scope of his agency and authority for all defendants.

16    104.    At the time that plaintiff was induced to sign loan documents alleged herein,

17    and continuing thereafter, plaintiff was led to believe that the representations made by

18    defendants and delivered to plaintiff by defendants and any other of defendants' representatives

19    as alleged herein, were true, namely:

20              a.    BC Bancorp and Chase Home Finance, LLC would work on

21    underwriting ONLY loans that were in plaintiff's best interest;

22              b.    BC Bancorp and Chase Home Finance, LLC would provide

23    plaintiff with low fees;

24              c.    That Chase Home Finance, LLC was backed by the power of "Wall

25    Street" and was a credible and trustworthy lender;

26              d.    Plaintiff would be placed in a "prime" loan with a "fixed" principal

27    and interest payment;

28

21

COMPLAINT

1                 e.      That by extending the loan term to a full 30 year term instead of the

2   20 year term the plaintiff was on that the monthly payments would be substantially similar to the

3   plaintiff's current loan payments;

4                 f.      That plaintiff would get substantially the same or similar loan to the

5   plaintiff's then current mortgage;

6                 g.      That the loan would have a 5 year fixed principal and interest

7   payment;

8                 h.      That because it was a "prime" loan it would not have a prepayment

9   penalty;

10                 i.      That the plaintiff would qualify for a refinance within one year's

11   time period in order to secure another low interest rate for a 30 year term "this next time around";

12                 j.      That plaintiff's house is worth at least $660,000 and would

13   continue to increase;

14                 k.      That plaintiff's income would be verified to substantiate that he

15   qualified for the loan and could afford it;

16                 l.      That with plaintiff's FICO score that defendants would have no

17   trouble getting plaintiff a "good loan";

18                 m.      That plaintiff would be given a "free" review by a financial expert

19   for loan qualification and financial advice;

20                 n.      That plaintiff would be presented with various options and that it be

21   up to the plaintiff to choose the loan that fits his needs best;

22                 o.      That plaintiff would be reviewed in "good faith" for a reasonable

23   loan modification to avoid foreclosure;

24        105.    The representations made by defendant were in fact false.  The true facts were:

25                 a.      That defendants would work to place plaintiff in a loan that created

26                       the greatest economic gain for defendants and therefore BC Bancorp and

27                       Chase Home Finance, LLC worked together to place plaintiff in loan that

28                       was in defendants' best interest not plaintiff's;

b.     That plaintiff would be charged the maximum fee possible with no discount opportunity provided;

c.     That Chase Home Finance, LLC was a correspondent or table funding broker the only difference between BC Bancorp was that as a correspondent lender / table funder the yield spread premium wasn't disclosed to the plaintiff;

d.     That Chase Home Finance, LLC was selling pre-sold loans with no direct "Wall Street" support;

e.     That plaintiff was placed in a risky loan that was a subprime adjustable rate negative amortization product where the plaintiff's minimum payment would not be sufficient to cover the interest only payment, let alone a principal and interest payment;

f.     The plaintiff was placed in a worse loan than if the plaintiff never decided to refinance;

g.     The true monthly payment at the increased loan payment was sufficient to exceed the plaintiff's take home pay;

h.     That plaintiff's was placed in a loan that was substantially the opposite of the plaintiff's original loan;

i.     That plaintiff was placed in a loan that was substantially the opposite of a safe loan;

j.     That at the time of signing the principal and interest loan was represented to have changed to an interest only loan, the true facts are the loan was a negative amortization option arm loan where the monthly payment was a minimum payment that was far less than even an interest only/principal and interest payment;

k.     That the fully amortized payment was highly likely to subject plaintiff to a payment shock that plaintiff could not afford;

1           l.     The plaintiff was put into a loan where little to no underwriting

2           analysis was given to plaintiff's ability to make payments at time of

3           "recast" or adjustment;

4           m.    The defendants knew of the likelihood of plaintiff's ability to

5           refinance was not possible unless the property was guaranteed to increase

6           in value and the plaintiff's earning potential was to dramatically increase;

7           n.     The defendants effectively inflated plaintiff's appraisal value;

8           o.     The plaintiff was put into a loan the defendants knew plaintiff could

9           not afford;

10         p.     No income was verified, although plaintiff's provided defendants

11         with his income documents, in at minimum through the 4506;

12         q.     The defendants' "financial expert" was no more than a mortgage

13         sale person with no qualifications or certification in financial expertise or

14         advice giving, of financial planning;

15         r.     Plaintiff was only given the one loan option and it was changed

16         from a principal and interest loan to an interest only loan and presented for

17         the first time at signing;

18         s.     Using the initial low payment and/or interest rate to entice plaintiff

19    into entering into the Note;

20         t.     Implementing a uniform pattern of practice of intentionally failing

21    to disclose to plaintiff that the low payments under the loan would continue for years with a

22    negative amortization;

23         u.     Implementing a uniform pattern of practice in failing to disclose,

24    conspicuously, that the Note was an Option Arm Note;

25         v.     Implementing a uniform pattern of practice in failing to disclose to

26    plaintiff that if plaintiff continued to pay the minimum amounts that the Plaintiff's principal

27    balance on the note would increase;

28

COMPLAINT

1              w.     Failing to disclose prepayment penalties thereby preventing

2 plaintiff from refinancing the loan;

3              x.     Failing to inform plaintiff that the payments set forth in defendants'

4 schedule of payments were insufficient to cover the interest charges and that this was, in fact, a

5 risky loan.

6              y.     Defendants uniformly failed to inform plaintiff that when the

7 principal balance increased to a certain level he could no longer select the minimum payment

8 option.

9              z.     Concealing and disregarding plaintiff's ability to repay;

10            aa.     Concealing and inflating the true value of the real property;

11            bb.     Implementing a uniform pattern of practice in failing to disclose to

12 plaintiff fees assessed and fees paid to third parties under the loan;

13            cc.     Implementing a uniform pattern of practice in failing to disclose to

14 plaintiff loan products that would be more advantageous to plaintiff, or at minimum the truth

15 regarding this loan product;

16            dd.     That loan modification and trial plan were a fake attempt to avoid

17 foreclosure, the true nature of the false negotiations was to give plaintiff a false sense of security

18 that lender/servicer would later take advantage of;

19            ee.     That loan modification and trial plan would substantially result in

20 foreclosure;

21            ff.     That fees paid on the 'trial" plan would be used to cover the costs of

22 eviction proceedings;

23            gg.     That plaintiff would ultimately be "duped" into paying for plaintiff's

24 own foreclosure and/or eviction process.

25     106.     Defendants have produced an improper method and scheme of "pretending" to

26 negotiate in good faith only to produce denial letters, if any, with the hidden intent to defraud

27 homeowner of real property possession as foolws:

28

1       a.      Defendants after providing false loan modification assistance

2  information knew or should have known that such information was false, that Defendants had the

3  intent, and result of defrauding Plaintiffs and tha public so as to prevent a fair hearing, and to

4  deprive members of the public of the oppostunity to present their claims.

5       b.      At the time Defendants presented loan modification advertisement

6  to the public under the false guise of attempting to "avoid foreclosure" by reasonable methods the

7  Defendants provided this false information it did so (a) with the intention of misleading or

8  concealing from the public and Plaintiffs the true Net Present Value data, (b) with further

9  intention of fraudulently preventing the public from defeating an improper foreclosure and

10  subsequent unlawful detainer action, (c) placing Plaintiffs and public in a position where it makes

11  more sense to give up their legal rights and real property than litigate or defend reasonable claims,

12  (d) with the further intention of fraudulently preventing the public from an effective and

13  reasonable review for loan modification and avoiding foreclosure, and (e) with the further

14  intention of misleading or deceiving the courts, the public, and the plaintiff into believing that

15  foreclosure and unlawful detainer proceedings are appropriate.

16      107.   In so doing, Defendants knowingly deprived members of the public and

17  Plaintiff of an opportunity to avoid foreclosure, and opportunities to present a fair hearing to a

18  court of competent jurisdiction in avoiding eviction proceedings, and undermine the legitimacy

19  of the loan modification processes.  Defendants suppression of the material and significant true

20  information was an act of unfair competition and it prevents a meaningful modification review.

21      108.   Defendants' actions deprived the public, Plaintiffs, and all others affected of a

22  modification process and opportunities to avoid foreclosure untainted by fraud.  The review

23  process was so tainted by fraud as to lack all legitimacy, and constituted a fraud and sham.

24      109.   As a proximate result of the aforesaid conduct of defendants, the public and

25  Plaintiffs have been deprived of the benefits of a fair loan modification review.

26      110.   When the defendants, and each of them, made the above representations, they

27  knew them to be false and made these representation with the intention to deceive and defraud

28  plaintiff, induce plaintiff to act in reliance on these representations with expectation that

1    plaintiff would so act as to accept and agree to these representations in the manner herein

2    alleged and to attempt to get plaintiff to agree to exorbitant fees, agree to a fake loan

3    modification in order to get plaintiff to pay for plaintiff's own eviction process. Further,

4    defendants, and each of them, took affirmative steps to conceal the true facts from plaintiff.

5        111.    Plaintiff, at the time these representations were made by defendants through BC

6    Bancorp and Chase Home Finance, LLC and at the time plaintiff took actions herein alleged,

7    was ignorant of the falsity of defendants' representations and believed them to be true.  In

8    detrimental reliance on these representations, plaintiff was induced to and did, sign loan

9    documents, Pay substantially more for a subprime loan and has falsely become a prospective

10   debtor of Chase Home Finance, LLC.  Had plaintiff known the actual facts, it would not have

11   taken such actions.

12       112.    Plaintiff's detrimental reliance on Defendants' representations was justified

13   because defendants represented that they possessed client's interest above all else and superior

14   skills and knowledge in the mortgage lending profession, and owed a "special" or fiduciary

15   duty to plaintiff.

16       113.    As a proximate result of the fraudulent conduct of defendants, defendants sold

17   plaintiff on loan products referenced above for a greatly exorbitant price, far in excess of the

18   value of the services rendered, in excess of what plaintiff would have paid total for the same or

19   similar services had plaintiff known the true facts, and has subjected plaintiff to expenses for

20   an aggregate damage in at least the sum in excess of the jurisdictional limit of this court, and

21   additional amounts according to proof at time of trial.

22       114.    The aforementioned conduct of defendants, and each of them, was an

23   intentional misrepresentation, deceit, or concealment of a material fact known to each of the

24   defendants with the intention on the part of the defendants of thereby depriving plaintiff of

25   property or legal rights or otherwise causing injury, and was despicable conduct that subjected

26   plaintiff to a cruel and unjust hardship and conscious disregard of plaintiff's rights, so as to

27   justify an award of exemplary and punitive damages.

28